No. 14-1290

In the
**United States Court of Appeals**
for the Tenth Circuit

COLORADO OUTFITTERS ASSOCIATION, *et al.*;
*Plaintiffs-Appellants*,

v.

JOHN HICKENLOOPER;
*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Colorado

No. 13-cv-01300-MSK-MJW
Honorable Marcia S. Krieger

**BRIEF OF STATE FIREARM RIGHTS ORGANIZATIONS AS AMICI
CURIAE IN SUPPORT OF APPELLANTS**

C.D. Michel - S.B.N. 144258
Clinton B. Monfort - S.B.N. 255609
Anna M. Barvir - S.B.N. 268728
Michel & Associates, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Fax: 562-216-4445
*Counsel for Amici Curiae*

Appellate Case: 14-1290   Document: 01019376704   Date Filed: 01/23/2015   Page: 2

## CORPORATE DISCLOSURE STATEMENT

Amici California Rifle & Pistol Association, Gun Owners of California, Calguns Shooting Sports Association, Illinois State Rifle Association, Kansas State Rifle Association, League of Kentucky Sportsmen, Inc., Nevada Firearms Coalition, Association of New Jersey Rifle & Pistol Clubs, New Mexico Shooting Sports Association, Texas State Rifle Association, Utah State Rifle & Pistol Association, Vermont Federation of Sportsman's Clubs, Inc., Vermont State Rifle & Pistol Association, and the Virginia Citizens Defense League have no parent corporations, have no stock, and therefore no publicly held company owns 10% or more of their stock.

Date: January 21, 2015                    Respectfully Submitted

                                          /s/ C.D. Michel
                                          C.D. Michel
                                          Counsel for Amici

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE . . . . . . . . . . . . . . 1

California Rifle & Pistol Association ("CRPA") . . . . . . . . . . . . . . . . . . . . . 1
Gun Owners of California ("GOC") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Calguns Shooting Sports Association ("CGSSA") . . . . . . . . . . . . . . . . . . 2
Illinois State Rifle Association ("ISRA") . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Kansas State Rifle Association ("KSRA") . . . . . . . . . . . . . . . . . . . . . . . . . 3
League of Kentucky Sportsmen ("LKS") . . . . . . . . . . . . . . . . . . . . . . . . . 3
Nevada Firearms Coalition ("NVFAC") . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Association of New Jersey Rifle & Pistol Clubs, Inc. ("ANJRPC") . . . . . . 4
New Mexico Shooting Sports Association ("NMSSA") . . . . . . . . . . . . . . . 5
The Texas State Rifle Association ("TSRA") . . . . . . . . . . . . . . . . . . . . . . . 5
Utah State Rifle & Pistol Association ("USRPA") . . . . . . . . . . . . . . . . . . . 5
Vermont State Rifle & Pistol Association ("VSRPA") . . . . . . . . . . . . . . . . 6
Vermont Federation of Sportsmens Clubs ("VTFSC") . . . . . . . . . . . . . . . 6
Virginia Citizens Defense League ("VCDL") . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT REGARDING PARTICIPATION BY PARTIES, THEIR ATTTORNEYS, OR
OTHER PERSONS FUNDING OR AUTHORING THE BRIEF . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.   THE DISTRICT COURT ERRED BY INTERPRETING THIS CIRCUIT'S
     SECOND AMENDMENT ANALYTICAL FRAMEWORK IN A WAY THAT
     TREATS INTERMEDIATE SCRUTINY AS THE DEFAULT STANDARD FOR
     REVIEWING BURDENS ON THE RIGHT TO BEAR ARMS . . . . . . . . . . . . 9

# TABLE OF CONTENTS (cont.)

**Page**

II.   THE DISTRICT COURT FAILED TO HOLD THE GOVERNMENT TO
ITS BURDEN TO PROVE ITS FLAT BAN ON THE POSSESSION OF
PROTECTED MAGAZINES BY LAW-ABIDING CITIZENS IS
NARROWLY TAILORED TO ITS INTEREST IN PREVENTING
CRIMINAL MISUSE OF THOSE ARMS  . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)  . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CERTIFICATE OF DIGITAL SUBMISSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*Buckley v. Am. Const. L. Found., Inc.*,
  525 U.S. 182 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Buckley v. Valeo*,
  424 U.S. 1 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Carey v. Brown*,
  447 U.S. 455 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Colorado Outfitters Ass'n v. Hickenlooper*,
  24 F. Supp. 3d 1050 (2014) . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 16, 18, 19

*District of Columbia. v. Heller*,
  554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . 10, 12, 13, 14, 16, 21, 22, 23, 24

*Edenfield v. Fane*,
  507 U.S. 761 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*F.C.C. v. League of Women Voters of Cal.*,
  468 U.S. 364 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES (Cont.)

**Page(s)**

**CASES (cont.)**

*Jackson v. City and Cnty. of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kachalsky v. Cnty. of Westchester*,
    701 F.3d 81 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McCutcheon v. Fed. Election Comm'n*,
    134 S. Ct. 1434 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 24

*McDonald v. Chicago*,
    561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 21

*Morris v. U.S. Army Corps of Eng'rs*,
    No. 13-00336, 2014 WL 5177343 (D. Idaho Oct. 13, 2014) . . . . . . . . . . . 14

*Peterson v. Martinez*,
    707 F.3d 1197 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37, 45-46 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Silvester v. Harris*,
    No. 11-2137, 2014 WL 4209563 (E.D. Cal. Aug. 25, 2014) . . . . . . . . . . . 14

*Tyler v. Hillsdale Cnty. Sheriff's Dep't*,
    No. 13-1876, 2014 WL 7181334 (6th Cir. Dec. 18, 2014) . . . . . . . . . . . . . 15

*United States v. Chester*,
    628 F.3d 673 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

Appellate Case: 14-1290     Document: 01019375404     Date Filed: 01/23/2015     Page: 7

# TABLE OF AUTHORITIES (Cont.)

**Page(s)**

**CASES (cont.)**

*United States v. Chovan,*
 735 F.3d 1127 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13

*United States v. Huitron-Guizar,*
 678 F.3d 1164 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Masciandaro,*
 638 F.3d 458 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*United States v. Marzzarella,*
 614 F.3d 96 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. O'Brien,*
 391 U.S. 367 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Playboy Entm't Grp., Inc.,*
 529 U.S. 803 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*United States v. Reese,*
 627 F.3d at 802 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*United States v. Skoien,*
 587 F.3d 803 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Vincenty v. Bloomberg,*
 476 F.3d 74 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Washington v. Glucksberg,*
 521 U.S. 702, 721 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES (Cont.)

**Page(s)**

**OTHER AUTHORITIES**

Caroline Wolf Harlow, Bureau of Justice Statistics, U.S. Dep't of Justice,
*Firearms Use by Offenders* 3 (Nov. 2001),
http://www.bjs.gov/content/pub/pdf/fuo.pdf) . . . . . . . . . . . . . . . . . . . . . . . 23

Marianne Zawitz, Bureau of Justice Statistics, U.S. Dep't of Justice,
*Guns Used in Crime* 3 (July 1995),
http://www.bjs.gov/content/pub/pdf/GUIC.PDF . . . . . . . . . . . . . . . . . . . 24

Petition for Writ of Certiorari,
*Jackson v. City & Cnty. of San Francisco*,
(Dec. 12, 2014) (No. 14-704), 2014 WL 7169757 . . . . . . . . . . . . . . . . . . 14

## STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE

Pursuant to Rule 29(c)(4) of the Federal Rules of Appellate Procedure, Amici Curiae State Firearms Rights Organizations, which include the California Rifle & Pistol Association, Gun Owners of California, Calguns Shooting Sports Association, Illinois State Rifle Association, Kansas State Rifle Association, League of Kentucky Sportsmen, Nevada Firearms Coalition, Association of New Jersey Rifle & Pistol Clubs, New Mexico Shooting Sports Association, Texas State Rifle Association, Utah State Rifle & Pistol Association, Vermont Federation of Sportsman's Clubs, Inc., Vermont State Rifle & Pistol Association, and the Virginia Citizens Defense League respectfully submit this amici curiae brief, with the consent of all parties, in support of Appellants.

Founded in 1875, **California Rifle & Pistol Association ("CRPA")** is a non-profit organization that seeks to defend the Second Amendment and advance laws that protect the rights of individual citizens. CRPA regularly participates as a party or amicus in litigation challenging unconstitutional or illegal gun control laws. And it works to preserve the Constitutional and statutory rights of gun ownership, including the right to self-defense, the right to hunt, and the right to keep and bear arms. CRPA is also dedicated to promoting the shooting sports, providing education, training, and organized competition for adult and junior

Appellate Case: 14-1290     Document: 01019375404     Date Filed: 01/23/2015     Page: 10

shooters. CRPA's members include law enforcement officers, prosecutors, professionals, firearm experts, the general public, and loving parents.

**Gun Owners of California ("GOC")** is a California non-profit corporation that was organized in 1974. GOC is a leading voice in California, supporting the rights to self-defense and to keep and bear arms guaranteed by the Second Amendment. It monitors government activities at the national, state, and local levels that may affect the rights of the American public to choose to own firearms.

**Calguns Shooting Sports Association ("CGSSA")** is a 501(c)(4) non-profit organization. CGSSA seeks to encourage firearm owners to meet at ranges to promote a constantly developing community, to empower the community with information about the political landscape and the future of shooting sports options in California; and to encourage the community to reach out to others through education and community development events. CGSSA has filed multiple amicus curiae briefs in federal courts.

One of the nation's largest state gun-rights organizations, amicus **Illinois State Rifle Association ("ISRA")** is a non-profit 30,000-plus member association. Organized in 1913, ISRA seeks to support and protect the Second Amendment right to keep and bear arms of all citizens, particularly those living in Illinois. With its five lobbyists in the state capital and a strong attorney referral program, ISRA

works to protect the rights and interests of law-abiding citizens who use guns to protect their families, to hunt, and for sporting purposes such as target shooting. ISRA provides instruction in the safe use of firearms, and it works to promote and improve marksmanship skills. ISRA also endeavors to ensure that shooting ranges are safe, preserved, and available, including its newly improved outdoor range in Kankakee, Illinois.

**Kansas State Rifle Association ("KSRA")** was formed in 1928 as a 501(c)(4) membership association for the purpose of communication and cooperation for all those interested in shooting, reloading, collecting, and other endeavors related to firearms. KSRA seeks to promote safety, education, shooting competitions, wildlife conservation, and other firearm-related pursuits. KRSA's fundamental goal is to preserve the American heritage as exemplified and engendered in the Declaration of Independence, the Constitution, and the Bill of Rights for all citizens of the United States.

**League of Kentucky Sportsmen ("LKS")** was formed to educate its members and the general public, especially the youth and sportsmen of Kentucky, to create an understanding of the importance of good sportsmanship and the conservation and wise use of the fish, wildlife, and other natural resources of the Commonwealth of Kentucky, the United States, and the world. LKS works with

the Department of Fish & Wildlife Resources and seeks to deter any legislation which is considered to be detrimental to the Department of Fish & Wildlife Resources or the organized sportsmen's programs.

**Nevada Firearms Coalition ("NVFAC")** is dedicated to the ownership and safe use of firearms for self-defense, competition, recreation and hunting. NVFAC seeks to safeguard the rights of the citizens of Nevada to keep and bear arms in accordance with the Constitutions of the United States and the State of Nevada. NVFAC seeks to further the ideals and programs of other organizations whose goals are patriotism, conservation, and other worthwhile purposes, and who support the general objectives of the Coalition.

**Association of New Jersey Rifle & Pistol Clubs, Inc. ("ANJRPC")** is a non-profit membership corporation organized in 1936 to represent the interests of target shooters, hunters, competitors, outdoors people, and other law-abiding firearms owners in New Jersey. ANJRPC is the largest statewide organization dedicated to the shooting sports and the right to keep and bear arms in New Jersey. ANJRPC seeks to aid such persons in every way within its power, and to defend the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.

Appellate Case: 14-1290   Document: 01019375679   Date Filed: 01/23/2015   Page: 13

**New Mexico Shooting Sports Association ("NMSSA")** is a non-profit corporation that seeks to promote social welfare and public safety, law and order, and the national defense. NMSSA serves as the official state association of the National Rifle Association ("NRA"), and works with other organizations of good repute in carrying out activities of mutual benefit. NMSSA also seeks to promote good sportsmanship and competitive shooting events, and to foster the conservation and wise use of renewable wildlife resources.

**Texas State Rifle Association ("TSRA")** is a 501(c)(4) non-profit organization formed in 1919 and incorporated in 1939. TSRA has tens of thousands of members, and it has been recognized as the State Association of the Year by the NRA at least six times in recent years. Since its inception, TSRA has taken a leadership role in defending the United States Constitution and the rights of lawabiding Americans, protecting the lawful possession and use of firearms, providing gun safety training, supporting the shooting sports, and promoting hunter education and wildlife conservation efforts.

**Utah State Rifle & Pistol Association ("USRPA")** is a 501(c)(4) that was formed in 1933 to promote amateur shooting sports competition, marksmanship, hunting, and related outdoor and indoor sports. It serves as the official state association of the NRA and the Civilian Marksmanship Program. USRPA

Appellate Case: 14-1290    Document: 01019375494    Date Filed: 01/23/2015    Page: 14

promotes and supports junior-shooter and senior-shooter activities, range development both indoor and outdoor, as well as fostering and expanding competitive shooting in rifle and pistol disciplines.

**Vermont State Rifle & Pistol Association ("VSRPA")** is a 501(c)(7) nonprofit formed in 1938. VSRPA supports competitive shooting sponsored by both the NRA and Civilian Marksmanship Program and junior shooting programs in the State of Vermont. VSRPA seeks to promote and support junior shooters and junior shooter activities, as well as to foster and expand competitive shooting in both rifle and pistol disciplines.

**Vermont Federation of Sportsmens Clubs ("VTFSC")** is a 501(c)(4) nonprofit formed in 1875. VTFSC is an association of Vermont sporting clubs and other similar organizations that works to support the interests of sportsmen and women across Vermont. VTFSC has become a leader in Vermont for the promotion of Safe Firearm Handling, teaching marksmanship skills, advocating for the construction of new ranges and enhancing existing ones, as well as providing courses that facilitate and promote the safe handling and shooting of all firearms.

**Virginia Citizens Defense League ("VCDL")** is a non-profit 501(c)(4) corporation with headquarters in Newington, Virginia. VCDL is a non-partisan, grassroots organization dedicated to advancing the fundamental human right of all

Virginians to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution and Article I Section 13 of the Constitution of the Commonwealth of Virginia.

Amici herein offer their unique experience, knowledge, and perspective to aid the Court in the proper resolution of this case. They share a goal of protecting the rights guaranteed under the constitutions of the United States and their respective states, including the rights of law-abiding citizens, including their members, to acquire, possess, and use protected arms. Amici have at their service preeminent Second Amendment scholars, as well as reputable firearms and self-defense experts and lawyers with decades of experience in firearms litigation. As such, Amici respectfully submit that they are uniquely situated to bring an important perspective to the resolution of the issues raised in this appeal.

# STATEMENT REGARDING PARTICIPATION BY PARTIES, THEIR ATTORNEYS, OR OTHER PERSONS IN FUNDING OR AUTHORING THE BRIEF

Pursuant to Rule 29(c)(5) of the Federal Rules of Appellate Procedure, Amici attest that no counsel for a party authored this brief in whole or in part, and that no person other than amici, their members, or their counsel made a monetary contribution to its preparation or submission.

## SUMMARY OF ARGUMENT

In reaching its decision, the district court acknowledged that magazines capable of holding more than 15 rounds, and firearms equipped with them, are in common use for the core lawful purpose of self-defense. As a result, the court found the possession and use of these arms to be conduct protected by the Second Amendment. But it then concluded that Colorado's decision to completely ban this protected conduct by prohibiting all law-abiding individuals from purchasing and possessing the magazines in their homes does not violate the Second Amendment. These findings are fundamentally incompatible.

Because Colorado's complete ban on protected conduct will necessarily fail any level of heightened scrutiny, this court need not select a standard of review to declare it categorically invalid. Should the Court be inclined to apply a level of heightened means-end scrutiny, however, amici write to respectfully direct the

Court's attention to two errors committed by the district court

First, the district court failed to recognize that laws banning conduct at the core of a fundamental right necessarily impose severe burdens prompting strict scrutiny. And it further erred by failing to require the government to establish that its magazine restriction is narrowly tailored to its interest in keeping the magazines from perpetrators of violent crime.

This Court should correct these errors and reverse the decision below.

## ARGUMENT

### I.   THE DISTRICT COURT ERRED BY INTERPRETING THIS CIRCUIT'S SECOND AMENDMENT ANALYTICAL FRAMEWORK IN A WAY THAT TREATS INTERMEDIATE SCRUTINY AS THE DEFAULT STANDARD FOR REVIEWING BURDENS ON THE RIGHT TO ARMS

In upholding Colorado's ban on the acquisition and possession of handguns and rifles equipped with standard magazines capable of holding more than 15 rounds, the district court employed the "two-step" model that has been adopted by a number of circuit courts, including this one. *Colo. Outfitters Ass'n v. Hickenlooper*, 24 F. Supp. 3d 1050, 1065 (2014) (citing *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010); *United States v. Huitron-Guizar*, 678 F.3d 1164 (10th Cir. 2011); *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013)). That approach asks first whether the law burdens conduct within the scope of the

Second Amendment. If it does, the second step of the analysis requires courts to review the law under a level of heightened scrutiny, either intermediate or strict. *Id.* at 1066. The level of scrutiny employed depends upon the nature of the restriction or its proximity to the core, and the extent to which the law burdens Second Amendment rights. *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)); *Hickenlooper*, 24 F. Supp. 3d at 1065.

Applying the first step, the district court correctly acknowledged that magazines capable of holding more than 15 rounds, and firearms equipped with them, are protected by the Second Amendment, as they are in common use for lawful purposes, *Hickenlooper*, 24 F. Supp. 3d at 1068-69, and therefore are not "dangerous and unusual." *Heller*, 554 U.S. at 627. The controversy stems from the reasoning the district court used to select intermediate scrutiny under the second prong of the analysis. As explained below, the court's interpretation and application of the two-step analysis is at odds with fundamental rights jurisprudence of the Supreme Court and multiple circuit courts.

Relying on a series of cases following the Supreme Court's decision in *District of Columbia. v. Heller*, 554 U.S. 570 (2008), the district court began its task of selecting strict or intermediate scrutiny by looking to the nature of the

10

restriction and the impact on Second Amendment rights.[1] As the Ninth Circuit

explained in *Chovan*, that evaluation requires the court to consider "how close the

law comes to the core of the Second Amendment right" and "the severity of the

law's burden" in determining the applicable standard of scrutiny. 735 F.3d at 1138

(quoting *Ezell*, 651 F.3d at 703). Correctly interpreting these precedents to this

point, the court's analysis veered off course when it mechanically applied the

second step of the analysis—essentially viewing the proximity to the core and level

of burden criteria as elements that must be separately satisfied to trigger strict

scrutiny. *Hickenlooper*, 24 F. Supp. 3d at 1068-71. And so, despite acknowledging

that the law restricts (and in fact bans) conduct at the core of the Second

Amendment, it found the burden on the ability to engage in self-defense

insufficient to warrant strict scrutiny. *Id.*

     The district court's interpretation and application of the second step is in

conflict with established precedent, for it improperly treats intermediate scrutiny as

the default standard for reviewing Second Amendment challenges. Contrary to the

district court's approach, laws directly restricting core fundamental liberties—by

their very nature—impose a severe burden on constitutional rights. As in the First

---

[1] *Hickenlooper*, 24 F. Supp. 3d at 1066 (citing *United States v. Marzzarella*, 614 F.3d at 96-97 (3d Cir. 2010), *Reese*, 627 F.3d at 802; *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011); *United States v. Chovan*, 735 F.3d at 1138 (9th Cir. 2013)).

Amendment context, when a law imposes restrictions on activity at the very core of the Second Amendment, "it makes little difference whether [courts] determine burden first because [such] restrictions . . . so plainly impose a 'severe burden.' " *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 207 (1999) (Thomas, J., concurring). Since we are to be guided by First Amendment principles in the Second Amendment context, *see, e.g.*, *Chester*, 628 F.3d at 682; *Chovan*, 735 F.3d at 1138; *Marzzarella*, 614 F.3d at 89 n.4; *Heller*, 554 U.S. at 635, laws restricting core conduct command strict scrutiny. *See, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).

Contrary to the suggestion of some circuits, even if the burden imposed does not rise to the level of a total or near-total ban on the exercise of self-defense, this must be the case. Indeed, strict scrutiny applies in the First Amendment context *far more often* than in challenges to flat bans on free speech in its entirety. A determination of burden properly turns on the extent to which the protected conduct at issue is being restricted. Here, the state has inflicted the most severe burden possible—a total ban on the possession and use of protected magazines by all law-abiding citizens for all purposes, including the very core right of in-home self-defense.

12

If there could be any doubt that restrictions on core Second Amendment rights warrant strict scrutiny, as is the case with restrictions on core First Amendment rights, instruction from the circuits that first adopted the two-step model make it crystal clear. In *United States v. Chester*, the Fourth Circuit began by acknowledging that "[g]iven *Heller*'s focus on 'core' Second Amendment conduct and the Court's frequent references to First Amendment doctrine, we agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment." *Id.* at 682. Accordingly, like many post-*Heller* cases, the *Chester* court applied intermediate scrutiny because the core right described in *Heller* was *not* implicated. *Id.* at 682-83; *see also, e.g.*, *Chovan*, 735 F.3d at 1138.

And in *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010), the Seventh Circuit, siting en banc, upheld a ban on firearm possession by domestic violence misdemeanants under intermediate scrutiny, *id.* at 642, after a three-judge panel had similarly "reasoned that because [']the core right of self-defense identified in *Heller* [was] not implicated,['] intermediate scrutiny was the appropriate standard," *Chester*, 628 F.3d at 678 (quoting *United States v. Skoien*, 587 F.3d 803, 805 (7th Cir. 2009) (vacated)).

The following year, the Fourth Circuit again had occasion to expand upon

the proper application of the two-step approach to select a level of scrutiny. It clarified that, just "[a]s we observe that *any* law regulating the content of speech is subject to strict scrutiny, . . . *any* law that would burden the 'fundamental,' core right of self-defense in the home by a law-abiding citizen would be subject to strict scrutiny." *United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011) (emphasis added) (citation omitted) (citing *Playboy Entm't Grp., Inc*., 529 U.S. at 813).[2]

Again, laws restricting core rights impose burdens that necessarily warrant strict scrutiny. As one district court case plainly put it, "[a] regulation that threatens a core Second Amendment right is subject to strict scrutiny, while a less severe regulation that does not encroach on a core Second Amendment right is subject to intermediate scrutiny. *Morris v. U.S. Army Corps of Eng'rs*, No. 13-00336, 2014 WL 5177343, at *1 (D. Idaho Oct. 13, 2014), *appeal docketed*, No. 14-36049 (9th Cir. Dec. 10, 2014); *see also Silvester v. Harris*, No. 11-2137, 2014 WL 4209563, at *26 (E.D. Cal. Aug. 25, 2014), *appeal docketed*, No. 14-16840 (9th Cir. Sept.

---

[2]  To the extent that *Jackson v. City and County of San Francisco*, 746 F.3d 953, 964-65 (9th Cir. 2014), held otherwise, it conflicts with Supreme Court precedent in other rights contexts, thus treating the Second Amendment as a lesser right in conflict with *Heller* and *McDonald v. Chicago*, 561 U.S. 742 (2010). For these reasons, a petition for review by the United States Supreme Court is currently pending on this issue. Petition for Writ of Certiorari, *Jackson v. City & Cnty. of San Francisco*, (Dec. 12, 2014) (No. 14-704), 2014 WL 7169757.

25, 2014). But even if some modest regulations on the core right to arms for self-defense might receive lesser scrutiny, certainly this cannot be the case for laws that do not merely regulate, but explicitly ban, protected conduct in the home where, as the Second Circuit observed, core Second Amendment guarantees are "at their zenith." *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012).

While "strict scrutiny is not always triggered when a fundamental right is at stake," the Supreme Court has often signaled there is a presumption in its favor. *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, No. 13-1876, 2014 WL 7181334, at *15 (6th Cir. Dec. 18, 2014) (Second Amendment challenge) (citing, *e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (strict scrutiny applies to "fundamental" liberty interests); *id.* at 762 (Souter, J., concurring in the judgment) (discussing "fundamental" rights and "the corresponding standard of 'strict scrutiny' ")). And in those areas of constitutional law where intermediate scrutiny is favored, the Supreme Court has expressly justified its departure from the presumption favoring strict scrutiny. *Id.* (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 (1980); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983); *Carey v. Brown*, 447 U.S. 455, 459-62 (1980); *F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 375-77 (1984)). The Second Amendment should be treated no differently. And yet, according to the

district court, strict scrutiny does not apply even when the government imposes direct restrictions on core conduct the Second Amendment "elevates above all other interests." *Heller*, 554 U.S. at 635.

Left standing, the district court's interpretation of the second prong of the two-part test this Circuit has adopted would render that approach unconstitutional. Indeed, it would relegate the Second Amendment to exactly the kind of "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," that the Supreme Court has declared it is not. *McDonald*, 561 U.S. at 780. For, just as the First Amendment does not limit strict scrutiny to restrictions on core conduct that make it virtually impossible to engage in political speech or expressive conduct, restrictions reaching the Second Amendment's apex cannot be shielded from exacting scrutiny simply because the law does not severely diminish the ability to use firearms in self-defense. *Hickenlooper*, 24 F. Supp. 3d at 1069.

Amici respectfully urge the Court to clarify the proper application of the analytical framework adopted by the Tenth Circuit to ensure that it is in harmony with established fundamental rights jurisprudence.

## II.     THE DISTRICT COURT FAILED TO HOLD THE GOVERNMENT TO ITS BURDEN TO PROVE ITS FLAT BAN ON THE POSSESSION OF PROTECTED MAGAZINES BY LAW-ABIDING CITIZENS IS NARROWLY TAILORED TO ITS INTEREST IN PREVENTING CRIMINAL MISUSE OF THOSE ARMS

Given that the challenged law directly restricts core conduct in the home, the district court erred in refusing to apply strict scrutiny. But even if intermediate scrutiny were appropriate here, the decision below requires reversal because the district court failed to require Colorado to establish that the challenged law is narrowly tailored to its public safety objectives. Because the state has not—and cannot—meet this burden, this Court should declare the state's ban invalid.

When evaluating the constitutionality of a statute under intermediate scrutiny, the government bears three distinct burdens. First, it must establish that the law was enacted to promote an important governmental interest. *United States v. O'Brien*, 391 U.S. 367, 376-77 (1968). Second, it must provide evidence that the law is substantially related to that interest, or that it is likely further that interest to some material degree. *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993). And finally, the government must establish that its chosen means of furthering that objective is sufficiently tailored to that end. *McCutcheon v. Fed. Election Comm'n*, –U.S.–, 134 S. Ct. 1434, 1456-57 (2014). While narrow tailoring under intermediate scrutiny need not be the least restrictive means of accomplishing that objective, the government still bears the burden of establishing that the law is

17

"closely drawn to avoid unnecessary abridgment" of constitutional rights. *Id.* at 1456 (quoting *Buckley v. Valeo*, 424 U.S. 1, 25 (1976)).

According to Colorado, the General Assembly sought to reduce injuries from firearms by preventing the prohibited magazines from falling into the hands of mass murderers and other violent criminals. *Hickenlooper*, 24 F. Supp. 3d at 1071-72. And it attempted to accomplish this objective by banning all law-abiding individuals from purchasing and possessing the magazines.[3] The parties staunchly disagree over whether the law bears a substantial relationship to Colorado's public safety interests. *Id.* at 1072-74. But regardless of how this Court decides that issue, the challenged provision is unconstitutional because it is not narrowly drawn to prevent access by perpetrators of violent crime.

The Supreme Court recently instructed that laws restricting constitutional conduct cannot survive intermediate scrutiny if the government fails to carry its burden of establishing narrow tailoring—regardless of whether the law is substantially related to the advancement of an important governmental interest. In *McCutcheon v. Federal Election Commission*, the High Court concluded that

---

[3]  Amici do not take issue with the state's goal of keeping the prohibited magazines out of the hands of dangerous individuals. In fact, they share a deep interest with Colorado in ensuring that these magazines, and all other arms, are kept out of the hands of those who would use them to commit violent crimes.

aggregate limits on campaign finance contributions violate the First Amendment. 134 S. Ct. at 1462. After finding those limits unconstitutional because they failed to meaningfully promote the government's objective of preventing corruption, the Supreme Court went on to hold that "[q]uite apart from the foregoing" the restrictions separately violated the First Amendment because they were not "narrowly tailored to achieve the desired objective." *Id.* at 1456-57.

Here, the district court never engaged in an analysis of whether Colorado's blanket ban approach to curbing access by mass murderers and violent criminals was narrowly tailored. *Hickenlooper*, 24 F. Supp. 3d at 1073-74. Instead, the court merely stated it need not decide whether the challenged provision is a "perfect fit" and simply concluded that there is a "substantial relationship" between the policy and the objective. *Id.* at 1073-74. It never held the state to its burden to establish its law was "closely drawn to avoid  unnecessary abridgment" of constitutional rights, as it must. *McCutcheon*, 134 S. Ct. at 1456.

Plainly, banning all law-abiding citizens from accessing and using standard magazines (or any other protected arms) to prevent misuse by unlawful users lacks the required fit that the Supreme Court has instructed is required under intermediate scrutiny. Categorical restrictions, by their very nature, are the *broadest possible means* of accomplishing the government's interest. Rather than

19

target individuals who might misuse them for criminal purposes, Colorado has unnecessarily abridged (and flatly banned) the rights of all law-abiding citizens to possess and use standard pistol and rifle magazines that are overwhelmingly preferred by the American public. Certainly there are a wide array of options available to Colorado that are aimed at preventing dangerous individuals from accessing firearms that fall short of a blanket ban. But rather than target access by these individuals, the state has swept up all law-abiding citizens, even though the vast majority possess them for lawful purposes and certainly do not seek to possess them to perpetrate crime or commit mass murder.

While Colorado's approach might be permissible if the court were not tasked with evaluating a restriction on constitutionally protected conduct, every court to consider the issue has found or assumed that the possession and use of standard capacity magazines[4] to be protected by an enumerated fundamental right. Accordingly, the challenged provision cannot survive unless it is narrowly drawn to the State's public safety objectives.

The Second Circuit has explicitly held that laws banning the lawful use of constitutionally protected items to prevent criminal access will necessarily fail

---

[4] It is common for pistol magazines to range from 10-20 rounds, and rifle magazines to range from 20-30 rounds.

under intermediate scrutiny. In *Vincenty v. Bloomberg*, 476 F.3d 74, 84-85 (2d Cir. 2007), New York City sought to curb graffiti by preventing certain members of society from purchasing spray paint and broad tipped markers. To accomplish this objective, the city flatly banned all law-abiding persons under the age of 21 from purchasing these items. *Id.* at 77. The Second Circuit struck down the blanket prohibition, explaining that banning law-abiding citizens from purchasing markers and spray paint outright is not a permissible means of preventing them from falling into the hands of criminal users. *Id.* at 84-85.

In the district court, Colorado offered no explanation why its method of reducing criminal access would not be tolerated in the First Amendment context, but should be tolerated in the Second Amendment context. And surely it cannot. Such unequal treatment would improperly single the Second Amendment out for "special—and specially unfavorable—treatment," in direct contravention of the Supreme Court's admonition that the Second Amendment is not "a second-class right." *McDonald*, 561 U.S. at 745-46, 780.

Ultimately, the State's ban represents a policy choice as to the types of arms it desires its residents to use. But *Heller* is clear that such policy choices are off the table when considering commonly used, constitutionally protected arms. *See* 554 U.S. at 636. There, D.C. sought to ban handguns for the same reasons the State

wishes to ban its residents from having common rifles and magazines—to decrease criminal misuse and prevent injuries involving those arms through decreased availability. *Id.* at 681-82, 693-96 (Breyer, J., dissenting). Despite these interests, the Court held that D.C.'s handgun ban would "fail constitutional muster" under "any of the standards of scrutiny the Court has applied" to fundamental rights. *Id.* at 628-29 (maj. opn.).

If the D.C. handgun ban could not pass intermediate scrutiny (i.e., it lacked the required "fit" with the government's public safety interests), it follows that Colorado's ban on standard handgun and rifle magazines cannot survive such scrutiny either. For if prohibiting law-abiding citizens from acquiring or possessing protected arms in their homes were a valid method of reducing criminal access and misuse, *Heller* would have been decided differently. Handguns are involved in the vast majority of firearm-related homicides in the United States. *See id.* at 697 (Breyer, J., dissenting) (some 81 percent from 1993 to 1997). They are misused by criminals in most violent gun crimes by a wide margin.[5] And they make up the great majority of all guns stolen.[6] But despite the government's compelling interest

---

[5] *Id.* at 698 (citing Caroline Wolf Harlow, Bureau of Justice Statistics, U.S. Dep't of Justice, *Firearms Use by Offenders* 3 (Nov. 2001), http://www.bjs.gov/content/pub/pdf/fuo.pdf).

[6] *Id.* (citing Marianne Zawitz, Bureau of Justice Statistics, U.S. Dep't of Justice, *Guns Used in Crime* 3 (July 1995), http://www.bjs.gov/content/pub/pdf/GUIC.PDF).

in keeping easily concealed firearms out of the hands of criminals and unauthorized users, *Heller* teaches that a ban on the possession of those protected arms by the law abiding lacks the required fit under either strict or intermediate scrutiny. *Id.* at 628-29 (maj. opn.).

Said differently, it is not as if *Heller* found the handgun ban to be so burdensome that it must trigger (and fail) strict scrutiny. Rather, after finding that handguns were constitutionally protected, and despite acknowledging that the government has a compelling interest in keeping them from those who might misuse them, the Court nonetheless instructed that removing those arms from all law-abiding citizens was plainly an overbroad approach to reducing the availability of those arms to criminals under any level of heightened scrutiny.

The district court flatly ignored the Supreme Court's critical instruction on this point. Although it properly acknowledged the magazines are in widespread common use and thus constitutionally protected, it nonetheless held that the State's flat ban on their acquisition and use by the law abiding survived intermediate scrutiny. This error stemmed in large part from its failure to engage in the tailoring analysis that the Supreme Court has instructed is required under intermediate scrutiny. *McCutcheon*, 134 S. Ct. at 1456-57.

Just as the handgun ban in *Heller* was not tailored to prevent the criminal

23

misuse of those arms, the state's outright ban on the most popular handgun and rifle magazines is not sufficiently tailored to its interest in keeping those magazines from those who might use them for unlawful purposes. Because the Second Amendment clearly applies to these magazines, Colorado's blanket prohibition on their acquisition and use by all law-abiding citizens must fall.

## CONCLUSION

The Court should clarify that under the prevailing two-step approach for Second Amendment challenges, direct restrictions on core conduct necessarily impose burdens warranting strict scrutiny.

Regardless, the Court should declare Colorado's ban unconstitutional because laws flatly prohibiting the possession of protected arms by all law-abiding citizens lack the required fit with an interest in preventing access by perpetrators of violent crime under either strict or intermediate scrutiny.

For these reasons, Amici ask the Court to reverse the judgment of the district court below.

Respectfully submitted,
**MICHEL & ASSOCIATES, P.C.**

Date: January 21, 2015

 /s/ C.D. Michel
C.D. Michel
Clinton B. Monfort
Anna M. Barvir
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
*Counsel for Amici Curiae*

24

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 5233 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Word Perfect X5

in 14-point Times New Roman font.


Date: January 21, 2015                         /s/ C.D. Michel
                                               C.D. Michel
                                               Counsel for Amici Curiae

# CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2015 I electronically filed the foregoing

using the court's CM/ECF system which will send notification of such filing to the

following:

Peter Krumholz
Richard A. Westfall
Hale Westfall
1600 Stout Street, Suite 500
Denver, CO 80202

*Counsel for Plaintiffs Colorado Outfitters Association*; *Colorado Farm Bureau; Colorado Youth Outdoors*; *Outdoor Buddies, Inc.*; *Women for Concealed Carry*; *David Bayne*; *Dylan Harrell*

Douglas Abbott
Holland & Hart, LLP
555 17th Street, Suite 3200
Denver, CO 80202

*Counsel for Plaintiffs National Shooting Sports Foundation*; *MAGPUL Industries*

Anthony Fabian
Anthony J. Fabian Law Offices
510 Wilcox Street, Suite C
Castle Rock, CO 80104

*Counsel for Plaintiffs Colorado State Shooting Association*; *Hamilton Family Enterprises, Inc.*

Jonathan Michael Anderson
Hale Westfall
1600 Stout Street, Suite 500
Denver, CO 80202

*Counsel for Plaintiffs National Shooting Sports Foundation*; *MAGPUL Industries*

| | |
|---|---|
| Marc F. Colin<br>Bruno, Colin & Lowe<br>1999 Broadway, Suite 3100<br>Denver, CO 80202 | *Counsel for Plaintiffs USA Liberty Arms*; *Rocky Mountain Shooters Supply*; *2ⁿᵈ Amendment Gunsmith & Shooter Supply, Inc.*; *Burrud Arms, Inc.*; *Green Mountain Guns*; *Jerry's Outdoor Sports & Supply*; *Specialty Sports & Supply*; *Good for the Woods* |
| David C. Blake<br>Daniel D. Domenico<br>Jonathan Patrick Fero<br>Matthew D. Grove<br>John T. Lee<br>Molly Allen Moats<br>LeeAnn Morrill<br>Stephanie Lindquist Scoville<br>Kathleen Spalding<br>Office of the Attorney General<br>State of Colorado<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10ᵗʰ Floor<br>Denver, CO 80203 | *Counsel for Defendant John W. Hickenlooper* |
| David B. Kopel<br>Research Director, Independence Inst.<br>Adjunct Professor of Advanced<br>Constitutional Law, Denver University<br>Strum College of Law<br>727 East 17ᵗʰ Ave.<br>Denver, CO 80203 | *Counsel for Plaintiffs Sheriffs and David Strumillo* |

Date: January 21, 2015              /s/ Laura L. Quesada
                                    Laura L. Quesada

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

    (1) all required privacy redactions have been made per 10th Cir. R. 25.5;

    (2) if required to file additional hard copies, that the ECF submission

is an exact copy of those documents;

    (3) the digital submissions have been scanned for viruses with the

most recent version of a commercial virus scanning program, VIPRE Business,

Version 36920, last updated January 23, 2015, and according to the program are

free of viruses.


               /s/ Laura L. Quesada

               Laura L. Quesada