UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| COLORADO OUTFITTERS ASSOCIATION, *et al.*, <br><br> Plaintiffs-Appellants, <br><br> vs. <br><br> JOHN W. HICKENLOOPER, Governor of the State of Colorado, <br><br> Defendant-Appellee, | No. 14-1290 |
| JIM BEICKER, Sheriff of Fremont County, *et al.*, <br><br> Plaintiffs-Appellants, <br><br> vs. <br><br> JOHN W. HICKENLOOPER, Governor of the State of Colorado, <br><br> Defendant-Appellee. | No. 14-1292 |

**RESPONSE TO MOTION TO STRIKE APPENDICES
AND ASSOCIATED ARGUMENTS IN REPLY BRIEFS; OR
IN THE ALTERNATIVE, MOTION TO SUPPLEMENT RECORD
PURSUANT TO THIS COURT'S EQUITABLE POWER**

Plaintiffs-Appellants in the above-captioned appeals hereby respond to the Governor's Motion to Strike Appendices and Associated Arguments in Reply Briefs ("the Motion"). In the alternative, Plaintiffs-Appellants move to supplement the record pursuant to this Court's equitable power.

1.  The Governor argues that certain attachments to the Plaintiffs' reply briefs should be stricken because they constitute an attempt to supplement the record without having followed the procedures for doing so.

2.  The Governor's Motion, however, fails to provide this Court with the necessary background to understand the purposes for which the attachments were filed. When viewed in context, the attachments were perfectly appropriate.

3.  The attachments and related argument in the Reply Brief of the Non-Profit Plaintiffs in case number 14-1290,[1] were a response to *amicus* Everytown for Gun Safety ("Everytown"), whose brief injected extra-record material. The Non-Profits simply examined the very same material injected by Everytown. Unlike Everytown, the Non-Profits then provided an attachment to their Reply Brief, in order to be transparent in how they used Everytown's data source.

---

[1] The Plaintiffs-Appellants in No. 14-1290 include not only non-profits, but also individuals, manufacturers, and licensed firearms retailers. For concision, this Response refers to all Plaintiffs in 14-1290 as "the Non-Profits."

4. In case number 14-1292, the Sheriffs' Reply Brief contains calculations based on evidence already in the record. Rather than merely assert the results of those calculations, however, the Sheriffs "showed their homework" by providing an attachment demonstrating how they used record evidence to make the calculations.

I. **The Non-Profits Merely Responded to Material Injected by an Amicus Brief.**

5. Taken at face value, the Governor's Motion suggests that the Non-Profits, out of the blue and with no precipitating event, attempted to supplement the record on appeal by attaching data to their Reply Brief that had not been presented to the trial court. This suggestion is incorrect.

6. In attaching the data to their Reply Brief, the Non-Profits were responding to material injected by one of the amicus briefs filed in support of the Governor. Everytown claimed it examined firearms retailer postings purportedly found on a gun sales website, Gunbroker.com, which showed:

> As of December 2014, 485 licensed dealers had listed themselves on the website Gunbroker.com as available and willing to facilitate transfers between unlicensed parties – about a quarter of the 1,987 total licensed dealers in the state. Assuming that this list is exhaustive, the data indicate that 94.8 percent of Coloradans currently live within 10 miles of a gun dealer who is conducting background checks for unlicensed sellers.

Everytown Br. at 26. Notably, Everytown omitted any of the data that supposedly supported its assertion.

7. Everytown's assertion is not trivial. If 95 percent of Coloradans live within 10 miles of a Federal Firearms Licensee ("FFL") willing to do a background check for private transfers, then the burden HB 1229 places on citizens is less severe. The severity of the burden is part of the two-step Second Amendment analysis prescribed by *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010).

8. Rather than leave Everytown's assertion unrebutted, the Non-Profits used the same postings from Gunbroker.com and came up with the data attached to the Reply Brief – all of which can be independently and readily verified. Using that data, the Non-Profits generated maps showing that, in fact, there are only a handful of FFLs in all of Colorado that are processing background checks for intra-state private transfers required by HB 1229.[2] Thus, the data from Gunbroker.com actually shows that there are enormous areas of Colorado where a willing FFL cannot be found, so that citizens in those areas cannot as a practical matter comply with HB 1229. Non-Profit Reply Br. at 10-11. The effectiveness of these maps

---

[2] As the Non-Profits pointed out in their Reply Brief, Everytown failed to distinguish between background checks for private interstate transfers, for which FFLs can charge any amount they wish, and background checks for private intra-state transfers, for which FFLs cannot charge more than $10 under HB 1229. The distinction is crucial, and helps explain the discrepancy between Everytown's assertion and the maps included in the Non-Profits' Reply Brief.

might explain the Governor's desire for this Court to strike them, notwithstanding that they were created from data injected by an amicus brief supporting the Governor.

9. The Governor's counsel may suggest in reply that the proper response was to move to strike Everytown's injection of extra-record material into this case. However, it has become commonplace for amici to present facts or data from outside the record.

10. Indeed, this Court has noted that "[w]ith regard to the brief of amici, a certain leeway may be appropriate for citation to materials such as testimony in Congressional hearings, and citations to information on various websites in support of amici's policy-based arguments." *Bundren v. Parriott*, 245 F. App'x 822, 830 (10th Cir. 2007) (internal quotations omitted). Other federal courts hold that whether an amicus brief should be accepted depends on "whether the brief will assist the judges by presenting ideas, arguments, theories, insights, ***facts, or data that are not to be found in the parties' briefs***." *Voices for Choices v. Ill. Bell Tel Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (emphasis added). As then-Judge Alito once observed, "an amicus may provide important assistance to the court. 'Some amicus briefs collect background or factual references that merit judicial notice.'" *Neonatology Assocs., P.A. v. Comm'r of Internal Rev.*, 293 F.3d 128, 132 (3d Cir.

2002) (quoting Luther T. Munford, *When Does the Curiae Need an Amicus?*, 1 J. APP. PRAC. & PROCESS 279 (1999)).

11.   In light of the current trend of allowing amici to present extra-record evidence, the Non-Profits could not assume that this Court would grant a motion to strike and disregard Everytown's assertion. Instead they reasonably chose to address it – and the purported underlying data – on their own terms. The Governor's counsel is understandably not happy with the result. Such are the hazards of amicus support.

12.   The Motion cites to a Tenth Circuit case that is inapplicable to the present circumstances. In *West Coast Life Ins. v. Hoar*, 558 F.3d 1151 (10th Cir. 2009), this Court struck from the defendants' reply brief certain statistical evidence concerning auto accident fatalities, and evidence concerning warnings on ski resort lift tickets, because that evidence had not been presented to the district court. *Id.* at 1156-57. That evidence, however, was not injected by an amicus brief, as was the case here. Indeed, it appears that no amicus brief was filed in *Hoar*. Moreover, as the Court noted, the defendants provided no explanation as to why they had not mentioned the evidence at trial. Here, the reason that Plaintiffs did not discuss the Gunbroker data at trial was that the data were not part of the case. Defendant's amicus chose to bring Gunbroker.com into the case, on appeal.

13. Even if this Court determines the attachment should be stricken, the corresponding text in the Reply Brief should remain. Everytown asserted that postings on Gunbroker.com show one thing, and the Non-Profits assert that they show the opposite. This is a mere comment on the contents of a website that an amicus introduced and discussed. The attachment simply provides the Court with means to directly examine the assertion made by Everytown, and the Non-Profits' rejection of that assertion.

## II. The Sheriffs Made Calculations Based on Evidence Already in the Record.

14. In the Sheriffs' Reply Brief, the Sheriffs asserted that based on data introduced at trial, "the average number of fatalities in mass shootings when … criminals used magazines of 15 or less was 6.781. If … criminals used magazines over 15, average fatalities were 7.176. … the 'P value' is 0.778, indicating that it is very unlikely that the presence of a magazine over 15 rounds affects the number of fatalities." Sheriffs' Reply Br. at 31. Rather than make these assertions baldly, the Sheriffs attached an Appendix to their Reply Brief showing the calculations, based on data that had been entered as evidence. The Governor objects to both the numbers stated in the Reply Brief and the Appendix showing how those numbers were calculated. However, there is nothing inappropriate about submitting material that provides a newly organized description of information already in the record.

15. Federal courts have held that when appellants present evidence already in the record in a different format, it need not be stricken.[3] For example, in *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988), the appellant included in his brief two diagrams depicting the layout of a prison unit and the location of certain events. *Id.* at 338. The appellee moved to strike the diagrams on the ground that they were "new" diagrams and had never been presented to the trial court. The Ninth Circuit rejected the motion: "The diagrams are simply a visual depiction of verbal testimony at trial describing [the prison unit's] layout and where the searches were conducted." *Id.*; *cf. Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992) ("Most of the arguments asserted to be new are merely permissible variations on issues that were clearly raised below.").

16. Here, the Appendix attached to the Sheriffs' Reply Brief provides a table listing data taken from evidence already in the record. *See* JA.25:5325-53; 26:5408-57. The first page of the Appendix shows the averages (which anyone with a grade school education can generate) and the P value (which requires a

---

[3] Reply Briefs filed in this Circuit illustrate that it is not uncommon for appellate litigants to provide this Court with summaries or charts not introduced as evidence at trial, but which are based on evidence that was before the trial court. *E.g.,* 2013 WL 4040955 (Reply Brief filed in *Lykins v. Certainteed Corp.*, No. 12-3308, attaching chart summarizing evidence); 2005 WL 5783942 (Reply Brief filed in *SEC v. Dowdell*, No. 04-4008, attaching summary of documents produced in discovery and contained in record).

basic understanding of statistics), followed by a table containing the data used. After the table is a section, drafted by the Sheriffs' counsel, titled "How magazine size was determined." The next section is entitled "Descriptive Statistics." It is the work product of Professor Carlisle Moody and Noah Rauscher, and shows various ways to calculate the P value, all of which obtain very similar results. As Defendant points out, the last few pages of the Appendix contain a glossary for the technical terms which are used to explain the alternative calculations.

17.  This Court has held that where an appellee raises an argument not addressed by the appellant in the opening brief, the appellant may respond in the reply brief. *E.g., In re Gold res. Corp. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015); *Sadeghi v. Immigration & Naturalization Serv.*, 40 F.3d 1139, 1143 (10th Cir. 1994). Here, there was no evidence introduced at trial to support the notion that "large-capacity" magazines cause some specific percentage of higher fatalities in mass shootings. *E.g.,* JA.17:3728-29. The Sheriffs therefore spent no time in their Opening Brief attempting to argue otherwise. Yet both the Governor and amicus Brady Center introduced in their respective briefs the argument that the use of "large capacity" magazines in mass shootings results in a higher number of fatalities. The Sheriffs' efforts to address these assertions – using data that had already been introduced into evidence – was appropriate.

18.     The Motion also complains that the data table contains some incidents which came into the Record via the cross-examination of Dr. Kleck, and these incidents were admitted for impeachment only. The Motion is correct, but omitting those incidents actually strengthens the mathematical observation that use of a magazine over 15 rounds is unrelated to the number of fatalities.

19.     The Sheriffs identified 66 incidents from the record, and only five were from the cross-examination.[4] Omitting those five incidents, average fatalities in mass shootings were 7.36 when a magazine over 15 rounds was used, and 7.13 when smaller magazines were used – a difference of .23. This is even smaller than the .395 difference if the five cross-examination incidents were included. The "P value" is 0.7606 (versus 0.778 if the five cross-examination incidents were included).

20.     Even if this Court determines the Appendix to the Sheriffs' Reply Brief should be stricken, the corresponding text in the Reply Brief should remain,

---

[4] The Governor's cross-examination of Dr. Kleck had introduced 29 newspaper articles. Of those, 23 were classified as "?" in the Appendix, because the articles did not have enough information to determine magazine size. One other article duplicated an incident that Dr. Kleck had described in his report. JA.26:5413-16, 5418, 5421-30, 5433-54 (magazine size not determinable for crimes of 4/14/01, 6/3/06, 11/07, 1/27/09, 3/1/09, 4/27/09, 6/21/09, 7/6/09, 8/4/09, 11/09, 5/19/10, 7/23/11, 8/29/11, 9/18/11, 10/5/11, 10/9/11, 12/30/11, 2/12, 3/20/12, 3/30/12, 10/12/12); JA.26:5408-09 (duplicate incident of Kleck report, JA.25:5335).

as the statements on page 31 stand on their own and merely comment on evidence that is already in the case.

### III. In the Alternative, Plaintiffs-Appellants Move to Supplement the Record Pursuant to this Court's Inherent Equitable Powers.

21.    It is widely accepted that under some circumstances courts have inherent equitable power to supplement the record on appeal with material not before the district court. *United States v. Kennedy*, 225 F.3d 1187, 1190-92 (10th Cir. 2002); *see also Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1475-76 (10th Cir. 1993) (quoting *Jones v. Jackson Nat'l Life Ins. Co.*, 819 F. Supp. 1385, 1387 (W.D. Mich. 1993)); *Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 226-27 (3d Cir. 2009); *United States v. Murdock*, 398 F.3d 491, 499-500 (6th Cir. 2005); *Ross v. Kemp*, 785 F.2d 1467, 1474-75 (11th Cir. 1986). Among the factors this Court will consider is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of a pending issue. *Kennedy*, 225 F.3d at 1191.

22.    The maps presented in the Non-Profits' Reply Brief establish that HB 1229 imposes a significant burden on law-abiding Coloradans, many of whom will, as a practical matter, be unable to follow its dictate that private intra-state firearms transfers be processed at a firearms store. It is the Governor's burden to establish that HB 1229 does ***not*** impose a constitutionally excessive burden on

Second Amendment rights. *Reese*, 627 F.3d at 800-02. The maps make it a practical impossibility for the Governor to carry his burden. *Cf. Ezell v. City of Chicago*, 651 F.3d 684, 711 (7th Cir. 2011) (city required firearms permit applicants to be trained at shooting ranges, yet banned all public ranges in city).

23. The practicality of compliance has become the central issue on appeal because of the absence of record evidence in support of the Governor's burden. As described in the Non-Profits' briefs, Plaintiffs had testified at trial about the near-impossibility of finding gun stores to process in-state private sales or loans. The District Court had relied on the Governor's evidence that more than 600 Colorado FFLs have processed some type of private transaction. But the Governor's witness admitted he had no idea which, if any, of those FFLs had processed private intra-state transactions. HB 1229 is only about intra-state transactions.

24. Apparently, Everytown attempted to fill the evidentiary gap: to show that it is easy for Coloradans to comply with HB 1229's unusual system of requiring in-person FFL processing for private intra-state sales, loans, and returns. As the Non-Profits' Reply Brief demonstrates, Everytown failed to do so.

25. The calculations in the Sheriffs' Reply Brief show it is very unlikely that the presence of a magazine of more than 15 rounds affects the number of fatalities in mass shootings. Although the overwhelming purpose of HB 1224 was

to save lives in mass shootings, if criminal use of magazines of more than 15 rounds does not affect fatalities, then it is difficult to see how the Governor can establish that HB 1224 passes any level of heightened scrutiny, whether the level applied is intermediate, strict, or somewhere in between.

26. Finally, the interests of justice would be served if this Court, in determining an issue that implicates a fundamental right of Colorado citizens, made a fully informed decision based on the consideration of all relevant information available to it.

Respectfully submitted this 29th day of June, 2015.

HALE WESTFALL, LLP


s/Peter J. Krumholz
Peter J. Krumholz
1600 Stout St., Suite 500
Denver, Colorado 80202
Tel:   720-904-6010
Fax:   720-904-6020
pkrumholz@halewestfall.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th June, 2015, a true and correct copy of the foregoing pleading was served via ECF on the following:

| | |
|---|---|
| Matthew Grove | matt.grove@state.co.us |
| Jonathan Fero | jon.fero@state.co.us |
| John T. Lee | jtlee@state.co.us |
| Molly Allen Moats | molly.moats@state.co.us |
| Kathleen Spalding | kit.spalding@state.co.us |
| Stephanie Scoville | stephanie.scoville@state.co.us |
| LeeAnn Morrill | leeann.morrill@state.co.us |
| David B. Kopel | david@i2i.org |
| Joseph Greenlee | josephgreenlee@gmail.com |
| Douglas Abbott | dabbott@hollandhart.com |
| Marc F. Colin | mcolin@bcjlpc.com |
| Anthony J. Fabian | fabianlaw@qwestoffice.net |

s/Bethany Lillis
Bethany Lillis